[No. 18859-3-I. Division One. December 28, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. JEROME LARNEDO HENDERSON, *Appellant.*

*Anne E. Roberts, Lenell Nussbaum,* and *Karen North, Legal Intern,* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Danko, Deputy,* for respondent.

PEKELIS, J.—Jerome Larnedo Henderson appeals his conviction on one count of attempted second degree burglary. He contends that the trial court erred in failing to

instruct the jury as to the specific crime he intended to commit at the time of his attempted entry.

## I

In September 1985, Henderson was apprehended while attempting to enter a residence in Seattle. In February 1986, he was charged with one count of attempted second degree burglary, and in May of that year he went to trial. At trial, the jury was instructed that a person commits the crime of second degree burglary when he "enters or remains unlawfully in a building with intent to commit a crime against a person or property therein." WPIC 60.03; *see also* RCW 9A.52.030. None of the court's instructions specified or defined the crime or crimes allegedly intended. Henderson was found guilty as charged, and judgment and sentence were entered accordingly.

## II

The sole issue before us is whether the trial court erred in failing to instruct the jury as to the specific crime or crimes Henderson allegedly intended to commit. In *State v. Johnson,* 100 Wn.2d 607, 625, 674 P.2d 145 (1983), decided in December 1983, our Supreme Court held that in a burglary prosecution the jury instructions must specify and define the crime or crimes the defendant allegedly intended. Then in *State v. Bergeron,* 105 Wn.2d 1, 16, 711 P.2d 1000 (1985), decided in December 1985, the Supreme Court overruled *Johnson,* holding that it is sufficient if the jury is instructed in the language of the burglary statute. The court noted that prior to *Johnson,* the law in this state had always been that neither the information, the jury instructions, nor the court's findings and conclusions must designate the specific crime intended. *Bergeron,* 105 Wn.2d at 7–8.

Henderson was charged, tried, and convicted after the Supreme Court's decision in *Bergeron.* On the other hand, the act for which he was prosecuted occurred before *Bergeron,* during the brief period when *Johnson* was the law in this state. Henderson contends that because the criminal

act was committed when *Johnson* was the law, application of the rule in *Bergeron* to this case violates due process.

When a court overrules a prior decision so as to enlarge the scope of criminal liability, due process requires that the new rule be applied prospectively only. *State v. Gore,* 101 Wn.2d 481, 489, 681 P.2d 227 (1984). This principle is derived by analogy from the ex post facto clause of the federal constitution:[1]

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10 of the Constitution forbids. . . . If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

(Citation omitted.) *Bouie v. Columbia,* 378 U.S. 347, 353, 12 L. Ed. 2d 894, 84 S. Ct. 1697 (1964); *Gore,* 101 Wn.2d at 489.

▇ It is the law on the date of a defendant's criminal act that is significant to an ex post facto determination. *State v. Edwards,* 104 Wn.2d 63, 70, 701 P.2d 508 (1985). A new law violates the ex post facto prohibition if it (1) "aggravates a crime or makes it greater than it was when committed" (2) "permits imposition of a different or more severe punishment than was permissible when the crime was committed;" or (3) "changes the legal rules to permit less or different testimony to convict the offender than was required when the crime was committed." *Edwards,* 104 Wn.2d at 70–71. On the other hand, a change in the law does not violate the ex post facto provision if it neither increases the punishment for an offense nor alters the ingredients of the offense, the ultimate facts necessary to establish guilt, or the degree of proof necessary. *Edwards,* 104 Wn.2d at 71 (citing *Hopt v. Utah,* 110 U.S. 574, 590, 28 L. Ed. 262, 4 S. Ct. 202 (1884)).

---

[1]U.S. Const. art. 1, § 10.

*Johnson* held that in order to effectively define one of the statutory elements of burglary, it was necessary to specify the crime or crimes intended:

> In a burglary prosecution one of the elements which the State must prove is "intent to commit a crime against a person or property". *See* RCW 9A.52.030. To define this element, the court must define a "crime", for the jury may otherwise convict a defendant for unlawful entry with intent to commit an act which the jury believes, but which is actually not, a crime. The only method of effectively defining "crime" is to specify and then define whatever possible crimes the defendant may have intended in the particular case.

(Footnote and citations omitted.) *Johnson,* 100 Wn.2d at 624. In addition, specification of the crime or crimes intended was believed necessary to prevent the jury from considering alternatives unsupported by the evidence:

> [A] jury should be allowed to consider alternative methods of committing a crime only if there is substantial evidence supporting each alternative. . . . Where intent to commit one of any number of crimes is an element of an offense, . . . this limitation can be applied only when the instructions specify the various crimes the defendant may have intended to commit. . . . Absent specification, it is impossible to prevent the jury from unguided speculation as to any and all criminal acts it might imagine.

(Citations omitted.) *Johnson,* 100 Wn.2d at 624.

▇ Thus, under *Johnson,* specification of the crime intended was merely a means of defining one of the elements of burglary, "intent to commit a crime against a person or property". RCW 9A.52.030. The purpose of the rule was twofold: (1) to prevent the jury from making erroneous assumptions as to what constituted a "crime," and (2) to prevent the jury from engaging in "unguided speculation" about intended crimes unsupported by the evidence. However, the specific crime intended was not itself an element or "ingredient" of burglary[2] or an "ultimate fact" necessary

---

[2]We recognize that there is language in *Bergeron,* 105 Wn.2d at 8, which suggests that under *Johnson* the specific crime intended was an "element" of the

to establish guilt. Therefore, since *Johnson* did not add an ingredient to the crime of burglary, *Bergeron* did not remove one.

■ Since *Bergeron* neither increased the punishment for attempted second degree burglary nor altered the ingredients of the offense or the degree of proof necessary, it did not enlarge the scope of criminal liability. *See Edwards*, 104 Wn.2d at 71; *Gore*, 101 Wn.2d at 489. Consequently, application of the rule in *Bergeron* to this case does not violate due process.

Affirmed.

COLEMAN, J., and SCHUMACHER, J. Pro Tem., concur.

Reconsideration denied February 5, 1988.

Review granted by Supreme Court May 31, 1988.

---

offense. However, we think that a careful reading of *Johnson*, including the language quoted above, demonstrates that such is not the case.