[No. 53803-4.  En Banc.  July 15, 1988.]

*In the Matter of the Personal Restraint of*
ALLEN RAY WILLIAMS, *Petitioner.*

---

[6]OSB's wry remark that Rourke was "the one person who was certain to give the wrong answer" has no basis in the record.

354

*Allen Ray Williams,* pro se, and *Scott J. Engelhard* of *Washington Appellate Defender Association,* for petitioner.

*John W. Ladenburg, Prosecuting Attorney, Chris Quinn–Brintnall, Senior Appellate Deputy,* and *H. Eben Gorbaty, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The personal restraint petition of Allen Ray Williams (defendant) raises a number of issues relating to the use of prior convictions in sentencing a defendant under the Sentencing Reform Act of 1981 (SRA).[1]

On July 20, 1985, the defendant, who had a long history of driving infractions, drove a truck into another vehicle and caused the death of the other driver. The defendant had been drinking and had a blood alcohol reading in excess of .10 at the time.

On February 5, 1986 the defendant pleaded guilty to the crime of vehicular homicide (RCW 46.61.520). Four driving while under the influence convictions were listed on the defendant's statement on plea of guilty which he signed at that time.

On March 28, 1986 the sentencing hearing was held. Three additional driving offenses were added to the criminal history section of the judgment and sentence form. Thereupon judgment was pronounced and the sentence entered. The defendant received a 77–month sentence, which he is now serving.

The defendant did not appeal but later filed this personal restraint petition in the Court of Appeals. By his petition, he challenged the constitutionality of his conviction and alleged that as a consequence of its unconstitutionality he is being unlawfully deprived of his liberty. The

[1] RCW 9.94A.

Chief Judge of Division Two of the Court of Appeals dismissed the petition. By order dated December 2, 1987, we granted discretionary review.

Four issues are presented.

## ISSUES

ISSUE ONE. Were the three prior driving offenses added to the defendant's "criminal history" by the sentencing court at the sentencing hearing, and used to calculate his offender score, improperly used because they had been "washed out" under the SRA's 5–year "wash–out" statute?

ISSUE TWO. Was the use of defendant's pre–SRA convictions to determine his offender score under the SRA a violation of the ex post facto prohibitions of our federal and state constitutions?

ISSUE THREE. With reference to the defendant's four prior convictions of driving while under the influence, which he admitted to in his statement on plea of guilty to the vehicular homicide charge, and which were also used by the sentencing court in calculating his offender score under the SRA, did the defendant in his personal restraint petition make a threshold showing of prima facie constitutional error sufficient to justify collateral attack on those convictions?

ISSUE FOUR. Was the defendant denied his due process rights at the SRA sentencing hearing?

## DECISION

ISSUE ONE.

CONCLUSION. It appears from the face of the abstract of the defendant's driving record used at his sentencing that three of his prior traffic offenses (which were brought in at the time of the hearing and used in determining his offender's score and hence the presumptive standard sentence range) were improperly used because they had previously been "washed out" under the terms of the "wash–out" statute then in effect.

The beginning point in any sentencing under the SRA is the offense for which the defendant is convicted.[2] And the defendant's plea of guilty to that offense was, of course, a confession of guilt, the result of which is equivalent to conviction; by pleading guilty, he acknowledged full responsibility for the legal consequences of his guilt.[3] His guilty plea had the same effect as a verdict of guilty.[4]

Under the SRA, other than the offense for which a defendant is convicted, the major determinative of the defendant's presumptive sentence is the "offender score";[5] and that in turn is based on the defendant's "criminal history".[6]

Prior to enactment of the SRA, sentencing judges were permitted to consider just about any information concerning the defendant's criminality that they chose to, and this was true whether it had resulted in a conviction or not.[7] The Sentencing Guidelines Commission, however, was of the view that it was inconsistent with the principles underlying our system of justice to sentence a person on the basis of crimes that the State either could not or chose not to prove.[8] Accordingly, the Commission's proposed solution, which was adopted by the Legislature when it enacted the SRA, was to provide that a defendant's offender score

---

[2]D. Boerner, *Sentencing in Washington* § 5.2, at 5–1 (1985).

[3]*State v. Schimmelpfennig,* 92 Wn.2d 95, 104, 594 P.2d 442 (1979).

[4]*Woods v. Rhay,* 68 Wn.2d 601, 605, 414 P.2d 601, *cert. denied,* 385 U.S. 905 (1966).

[5]RCW 9.94A.360.

[6]RCW 9.94A.030(8)(b). *See* D. Boerner § 5.4, at 5–6.

[7]*See State v. Blight,* 89 Wn.2d 38, 41, 569 P.2d 1129 (1977); *State v. Russell,* 31 Wn. App. 646, 648, 644 P.2d 704 (1982); D. Boerner § 5.2, at 5–2.

[8]D. Boerner § 5.2, at 5–2. *See also State v. McAlpin,* 108 Wn.2d 458, 466, 740 P.2d 824 (1987).

would be determined by the offenses for which the defendant was convicted and by the defendant's "criminal history" as that term is defined in the SRA.[9]

In all cases other than vehicular homicide cases, it appears that only felony convictions are considered in determining the offender score.[10] It seemed logical to the Sentencing Guidelines Commission and to the Legislature, however, that in vehicular homicide cases such as this one, prior convictions of specified traffic offenses deemed "serious traffic offenses"[11] were a more logical measure of prior culpability than felonies unrelated to operating motor vehicles.[12] Since many serious traffic offenses are misdemeanors rather than felonies, certain vehicular misdemeanor convictions, as well as vehicular felony convictions, are considered in vehicular homicide case sentencings.[13]

At the time the defendant pleaded guilty to the crime of vehicular homicide in this case, in his Statement of Defendant on Plea of Guilty (which both he and his former attorney signed),[14] he acknowledged four convictions of driving while under the influence. In that statement, the defendant also acknowledged:

*I fully understand that if criminal history in addition to that listed [above] is discovered, both the standard*

---

[9]*See* D. Boerner § 5.2, at 5–3.

[10]*See* RCW 9.94A.360; D. Boerner § 5.6(a), at 5–7.

[11] "'Serious traffic offense' means:

"(a) Driving while intoxicated (RCW 46.61.502), actual physical control while intoxicated (RCW 46.61.504), reckless driving (RCW 46.61.500), or hit–and–run an attended vehicle (RCW 46.52.020(5)); or

"(b) Any federal, out–of–state, county, or municipal conviction for an offense that under the laws of this state would be classified as a serious traffic offense under (a) of this subsection." RCW 9.94A.030(20).

[12]Sentencing Guidelines Commission, *Report to the Legislature* 12 (Jan. 1983); D. Boerner § 5.6(a), at 5–7 to 5–8.

[13]*See* D. Boerner § 5.14, at 5–25.

[14]CrR 4.2(g).

*range and the Prosecuting Attorney's recommendation may increase. Even so, I fully understand that my plea of guilty to this charge is binding upon me if accepted by the court,* and I cannot change my mind if additional criminal history is discovered and the standard range and Prosecuting Attorney's recommendation increases . . .[15]

At the subsequent sentencing hearing, the sentencing court also had before it what was apparently a certified copy of a Department of Licensing abstract of the defendant's driving record. The abstract listed numerous driving offenses other than the four driving while under the influence offenses which the defendant had admitted to at the time of his guilty plea. In determining the defendant's criminal convictions to be used in computing the defendant's offender score, the sentencing court found as a fact that the defendant had also committed three earlier "serious traffic offenses".[16] It then listed all seven of these convictions under "criminal history" on the face of the judgment and sentence, as required.[17] The addition of these three additional prior convictions increased both the defendant's offender score and his presumptive standard sentence range under the SRA.

At the time the defendant pleaded guilty, his standard presumptive sentence range had been computed at 36 to 48 months and the prosecuting attorney had agreed to recommend a 42–month sentence. After factoring in the three additional serious traffic offenses at the sentencing hearing, however, the offender score increased and the presumptive standard sentence range also increased—to 67 to 89 months. The abbreviated record before us does not reflect whether the prosecuting attorney changed sentencing recommendations. In any event, the court sentenced the

---

[15]This language is as contained in the Statement of Defendant on Plea of Guilty form prescribed by CrR 4.2(g). The emphasis, however, is not prescribed in the rule but is contained in the plea form signed by the defendant.

[16]*See* RCW 9.94A.030(20).

[17]RCW 9.94A.110.

defendant to serve 77 months, a term of confinement which exceeded the earlier computed presumptive standard sentencing range but which was within that range as recomputed.

On the sentencing date, the SRA "wash–out" statute read as follows:

> Class A prior felony convictions are always included in the offender score. Class B prior felony convictions are not included if the offender has spent ten years in the community and has not been convicted of any felonies since the last date of release from confinement pursuant to a felony conviction (including full–time residential treatment), if any, or entry of judgment and sentence. Class C prior felony convictions and *serious traffic convictions as defined in RCW 9.94A.330 are not included if the offender has spent five years in the community and has not been convicted of any felonies since the last date of release from confinement pursuant to a felony conviction* (including full–time residential treatment), if any, or entry of judgment and sentence. This subsection applies to both adult and juvenile prior convictions.

(Italics ours.) *See* former RCW 9.94A.360(12); Laws of 1984, ch. 209, § 19(12), p. 1069.

The three additional serious traffic convictions added to the defendant's "criminal history" by the sentencing judge at the sentencing hearing should not have been considered in determining the offender score. The abstract of the defendant's driving record, which the sentencing court had before it at the sentencing hearing, shows that the defendant had a felony–free driving record for the 5 years prior to the date he committed the crime of vehicular homicide. There is no claim that the defendant has any other felony record. Thus, the sentencing court should not have considered the three traffic convictions which occurred before the felony–free 5–year period.

After the defendant was sentenced, the Legislature changed the "wash–out" statute to require that not only must a defendant be free from felony convictions for 5 years, but a defendant in a vehicular homicide case must

also be free from serious traffic offense convictions for 5 years or the prior convictions will not wash out.[18] This change, however, did not become effective until July 1, 1986, 3 months after the defendant was sentenced.[19]

■■ The prosecuting attorney vigorously argues that a different former section of the SRA[20] should be considered as controlling this issue. The section relied on by the prosecutor, however, contained nothing whatsoever about washing out prior offenses, whereas the SRA section quoted above deals with that precise subject and specifically washes out "serious traffic offenses" where a defendant has been free of felony convictions for 5 years. The statute above set out is thus clear on its face, was applicable to this case by its terms and does not permit the construction urged by the prosecuting attorney.[21] "'Where there is no ambiguity in a statute, there is nothing for this court to interpret.'"[22]

We are thus presented with a situation where a defendant was sentenced in violation of a provision of the state sentencing law. Such an error may be raised in a personal

---

[18]RCW 9.94A.360(2); Laws of 1986, ch. 257, § 25(2), p. 932.

[19]Laws of 1986, ch. 257, § 38, p. 948.

[20]"If the present conviction is for Vehicular Homicide, only count the following crimes as part of the offender score: Vehicular Homicide, Vehicular Assault, Felony Hit and Run (RCW 46.52.020(4)), Hit and Run (RCW 46.52.020(5)), Driving While Intoxicated (RCW 46.61.502), Actual Physical Control (RCW 46.61-.504), Reckless Driving (RCW 46.61.500), Attempting to Elude a Police Officer (RCW 46.61.500). Count two points for each adult or juvenile Vehicular Homicide conviction, one point for each other adult felony traffic or serious traffic conviction, and 1/2 point for each other juvenile felony traffic or serious traffic conviction." Former RCW 9.94A.360(4); Laws of 1984, ch. 209, § 19(4), p. 1069.

[21]*PUD 1 v. Public Empl. Relations Comm'n*, 110 Wn.2d 114, 118, 750 P.2d 1240 (1988).

[22]*State v. McIntyre*, 92 Wn.2d 620, 622, 600 P.2d 1009 (1979), quoting *State v. Roth*, 78 Wn.2d 711, 714, 479 P.2d 55 (1971).

restraint petition.[23] Here the sentencing error shows on the face of the record. This error requires that the case be remanded to the Superior Court for resentencing without recourse to the washed–out convictions.[24] The defendant's guilty plea, however, need not be vacated. As pointed out above, when the defendant pleaded guilty to vehicular homicide and acknowledged his four prior driving while under the influence convictions (none of which are affected by this opinion), he also acknowledged that "I fully understand that my plea of guilty to this charge is binding upon me if accepted by the court, and I cannot change my mind if additional criminal history is discovered and the standard range and the Prosecuting Attorney's recommendation increases." If it should appear at resentencing by appropriate proof that there are other felonies or serious traffic offenses that were not washed out by the SRA wash–out statute, they too may be taken into consideration in resentencing.

ISSUE TWO.

CONCLUSION. The Sentencing Reform Act of 1981 does not increase punishment for prior offenses so does not violate either state or federal ex post facto provisions. *See* U.S. Const. art. 1, §§ 9, 10; Const. art. 1, § 23.

This court has held that a law violates the ex post facto prohibition if it: (1) aggravates a crime or makes it greater than it was when committed; (2) permits imposition of a different or more severe punishment than was permissible when the crime was committed; or (3) changes the legal rules to permit less or different testimony to convict the offender than was required when the crime was committed.[25] Ex post facto concerns generally arise when a statute criminalizes actions that were legal when performed

---

[23]RAP 16.4(c)(2); *In re Carle,* 93 Wn.2d 31, 33–34, 604 P.2d 1293 (1980).

[24]*See Carle,* at 34; *In re Habbitt,* 96 Wn.2d 500, 502, 636 P.2d 1098 (1981).

[25]*State v. Edwards,* 104 Wn.2d 63, 70–71, 701 P.2d 508 (1985); *State v. Henderson,* 50 Wn. App. 158, 160, 747 P.2d 504 (1987).

or when the punishment for a crime is increased beyond that in effect when the crime was committed.[26] A change in the law does not violate the ex post facto provision if it neither increases the punishment for an offense nor alters the ingredients of the offense, the ultimate facts necessary to establish guilt, or the degree of proof necessary.[27]

In *State v. Randle*, 47 Wn. App. 232, 734 P.2d 51 (1987), the defendant claimed that use of pre–SRA juvenile convictions to calculate a sentence for a post–SRA adult crime violated state and federal ex post facto provisions.[28] The Court of Appeals correctly observed that the defendant's argument rested on a flawed premise: that the use of juvenile offenses to determine or enhance sentences for subsequent adult crimes constitutes additional punishment for the prior conduct.[29] The argument of the defendant in that case obscured the fact that he was sentenced for his present, post–SRA adult conduct. "[B]ecause [the defendant] was punished only for conduct occurring after the SRA's effective date, it cannot be said that the act changes the legal consequences or underlying nature of the prior juvenile offenses. The SRA is therefore not retrospective as applied to [the defendant] and there is no ex post facto violation."[30]

The same analysis applies here, the SRA does not increase punishment for the defendant's prior offenses; rather, it calculates his sentence for his post–SRA conviction only. Use of the SRA in such a manner does not violate the ex post facto provisions of either the federal or state constitution.

---

[26] *State v. Randle,* 47 Wn. App. 232, 241, 734 P.2d 51 (1987).

[27] *Henderson,* at 160.

[28] *Randle,* at 240.

[29] *Randle,* at 241.

[30] *Randle,* at 243.

ISSUE THREE.

CONCLUSION. When a petitioner files a personal restraint petition collaterally attacking his prior convictions as unconstitutional, more is required than that the petitioner merely claim in broad general terms that the prior convictions were unconstitutional. The facts upon which the petitioner's claim of unlawful restraint is based and the evidence reasonably available to support the factual allegations must be stated.

As noted, the defendant claims that his prior convictions were unconstitutional and hence should not have been considered when he was sentenced for vehicular homicide. He does not, however, provide us with any facts or evidence on which to decide that issue. The essence of his personal restraint petition in this regard is no more than a conclusory allegation that "[t]he pleas of guilty to the serious traffic violations enumerated in the judgment and sentence are invalid because they were uncounseled and not voluntarily or intelligently made and violated [his] 6th Amendment Rights." The record is silent as to whether he waived counsel or not. The Chief Judge of Division Two of the Court of Appeals ruled that "neither the reasons given nor the record provided are adequate for such a challenge."[31] We agree.

It is fundamental in evaluating a personal restraint petition, that "[i]f a petitioner fails to meet the threshold burden of showing actual prejudice arising from constitutional error, the petition must be dismissed".[32] Here, quite aside from the matter of "prejudice", there has been no adequate threshold showing of any constitutional error in the first place. We do not, for example, have an affidavit providing the particulars of the claims of unconstitutionality of any of the prior offenses, or a certified transcript of the record or of the docket for any of these in–state cases,

[31]Division Two, Court of Appeals Order Dismissing Petition (Mar. 12, 1987).

[32]*In re Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983).

all of which ordinarily are readily available. For example, both the Superior Court Criminal Rules (CrR) and the Criminal Rules for Courts of Limited Jurisdiction (CrRLJ) require that judgments of conviction set forth whether a defendant is represented by a lawyer or has waived representation by a lawyer.[33] Our recent statement in a similar context is apropos here: "'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'"[34]

As our personal restraint petition rules also make clear, a personal restraint petition is required to include as grounds for the requested relief "[a] statement of . . . *the facts* upon which the claim of unlawful restraint of petitioner is based and *the evidence available* to support the factual allegations". (Italics ours.) RAP 16.7(a)(2)(i). What suffices to constitute such a showing must of necessity be decided on a case–by–case basis, but it is clear to us that the rule was not complied with in this case.

Accordingly, based on the insufficiency of the defendant's showing with regard to the claimed constitutional infirmities in his prior convictions, we decline to decide their validity or to order a superior court reference hearing with regard thereto.[35]

ISSUE FOUR.

CONCLUSION. The defendant was not denied due process in any of the various respects claimed.

Where, as here, the defendant enters a guilty plea, he is required to disclose his prior convictions.[36] The section of the SRA which so provides reads as follows:

---

[33]*See* CrR 7.3; CrRLJ 7.3.

[34]*In re Rozier,* 105 Wn.2d 606, 616, 717 P.2d 1353 (1986), quoting *United States v. Phillips,* 433 F.2d 1364, 1366 (8th Cir. 1970). *See also State v. Brune,* 45 Wn. App. 354, 363, 725 P.2d 454 (1986).

[35]*See Hews,* at 88.

[36]*State v. Ammons,* 105 Wn.2d 175, 183–84, 713 P.2d 719, 718 P.2d 796, *cert. denied,* 479 U.S. 930, 93 L. Ed. 2d 351, 107 S. Ct. 398 (1986).

The prosecuting attorney and the defendant shall each provide the court with their understanding of what the defendant's criminal history is prior to a plea of guilty pursuant to a plea agreement. All disputed issues as to criminal history shall be decided at the sentencing hearing.

RCW 9.94A.100.

Additional procedures for determining the defendant's record of convictions for sentencing purposes are outlined in two subsequent sections of the SRA. The first states:

Before imposing a sentence upon a defendant, the court shall conduct a sentencing hearing. The sentencing hearing shall be held within forty court days following conviction. Upon the motion of either party for good cause shown, or on its own motion, the court may extend the time period for conducting the sentencing hearing. The court shall consider the presentence reports, if any, including any victim impact statement and criminal history, and allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer as to the sentence to be imposed. If the court is satisfied by a preponderance of the evidence that the defendant has a criminal history, the court shall specify the convictions it has found to exist. All of this information shall be part of the record. Copies of all presentence reports presented to the sentencing court and all written findings of facts and conclusions of law as to sentencing entered by the court shall be sent to the department by the clerk of the court at the conclusion of the sentencing and shall accompany the offender if the offender is committed to the custody of the department. Court clerks shall provide, without charge, certified copies of documents relating to criminal convictions requested by prosecuting attorneys.

Former RCW 9.94A.110. The other section reads:

In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports. Where the defendant disputes material

facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence.

RCW 9.94A.370(2) (part).

Nothing in the record before us suggests that the foregoing SRA statutory procedures were not followed or that the defendant was deprived of any of his rights in connection therewith. Had he challenged the fact of any of his prior convictions, or denied that he was the person named in the record of any of his prior convictions, he would have been entitled to an evidentiary hearing thereon.[37] But in that event the sentencing court could also have required him to make any such denials under oath.[38]

We emphasize our holding in *State v. Ammons*, 105 Wn.2d 175, 188, 713 P.2d 719, 718 P.2d 796, *cert. denied,* 479 U.S. 930, 93 L. Ed. 2d 351, 107 S. Ct. 398 (1986), that a sentencing proceeding under the SRA is not to be turned into an appellate review of all of a defendant's prior convictions. The fact that the SRA structures the use of prior convictions at a sentencing does *not* mean that prior convictions are elements of the offense for which the defendant is being sentenced; they are not. As we also made clear in *Ammons,* the SRA recognizes and relies upon the fundamental distinction between the more rigid procedural protections necessary in using a prior conviction to prove an element of a crime or of habitual criminal status on the one hand, and in using a prior conviction to help determine a presumptive standard sentence range on the other.[39]

---

[37]RCW 9.94A.100; RCW 9.94A.370(2); *Ammons,* at 185; *State v. McAlpin,* 108 Wn.2d 458, 462, 740 P.2d 824 (1987).

[38]*See Ammons,* at 190.

[39]*Ammons,* at 187; *State v. Jones,* 110 Wn.2d 74, 77–79, 750 P.2d 620 (1988); D. Boerner § 6.11, at 6–19 to 6–20. *See State v. Holsworth,* 93 Wn.2d 148, 159, 607 P.2d 845 (1980) (State must prove constitutional validity of prior conviction in habitual criminal proceeding); *State v. Swindell,* 93 Wn.2d 192, 197, 607 P.2d

Because of this distinction, we disagree with the Court of Appeals analysis in *State v. Marsh,* 47 Wn. App. 291, 734 P.2d 545 (1987), cited in defendant's brief. In *Marsh,* the Court of Appeals held that when a judgment and sentence do not reflect representation by counsel or waiver, the conviction is facially invalid and cannot be used to establish a defendant's criminal history unless the State establishes by other documents the presence or waiver of counsel. To the extent that *Marsh* holds or suggests that the State must prove the constitutional validity of prior convictions at a sentencing hearing, it contravenes our previous holding in *Ammons.* The constitutional validity of prior convictions need not be affirmatively proved by the State at an SRA sentencing proceeding. Rather, it is the defendant who bears the burden of establishing the unconstitutionality of his or her prior convictions at such a proceeding.[40] The defendant is in the best position to object to the use of his or her prior convictions on the grounds that they were unconstitutionally obtained. Unless the convictions are facially invalid, it is presumed that a defendant's silence when his or her convictions are introduced means that they are proper to use for sentencing purposes.[41]

While we agree that the Department of Licensing abstract of defendant's driving record left much to be desired as a means of establishing his prior misdemeanor convictions, for the reasons stated above it did not result in the defendant being deprived of any of his rights, constitutional or otherwise.

We also note that nothing in the record bears out defendant's allegation of ineffective assistance of counsel.

---

852 (1980) (State must prove constitutional validity of prior conviction in proceeding to establish crime of felon in possession of firearm).

[40]*State v. Vahey,* 49 Wn. App. 767, 777, 746 P.2d 327 (1987); *State v. Davis,* 47 Wn. App. 91, 94, 734 P.2d 500, *review denied,* 108 Wn.2d 1029 (1987).

[41]*See* RCW 9.94A.370(2); *State v. Koepke,* 47 Wn. App. 897, 909, 738 P.2d 295 (1987).

Remanded for resentencing.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, CALLOW, GOODLOE, and DURHAM, JJ., concur.

DORE, J. (dissenting)—I dissent in part. I agree with the majority's conclusions regarding the "wash-out" of prior convictions and the inapplicability of ex post facto prohibitions. I cannot agree with its conclusion that proof of prior convictions by a Department of Licensing abstract meets the State's burden of proof under RCW 9.94A.110.

The Legislature has given the State the burden of proof on the issue of prior convictions because the State has the resources and records to obtain that information. While that task should not be made more burdensome than necessary, the majority's attempt to lighten the State's load has impermissible consequences for the defendant. The Department of Licensing is not infallible, nor are the municipal and district courts which handle most traffic offenses. It is entirely possible that an abstract of this kind might list offenses of which the defendant is not guilty, and to correct that record would be an expensive and time consuming process. If such an abstract is considered sufficient proof under RCW 9.94A.110, it falls to the defendant, pursuant to the majority opinion, to discover and prove that he is not the driver listed or that an offense has been ascribed to him which he did not commit. By permitting proof of prior convictions by a licensing abstract, the majority in effect shifts the burden of proof to the defendant. That is not only contrary to statute, it is unnecessary as a practical matter. Given that the abstract lists the courts in which Williams appeared on each of the offenses listed, it is not too much to ask the State to obtain proper records of those convictions for use at sentencing.

I would hold that the State has not met its burden under RCW 9.94A.110 on those grounds alone, but there is an additional reason why the licensing abstract is not sufficient proof. It is constitutionally defective.

The majority misconstrues Williams' due process argument in a number of ways. It stresses the fact that the prior offenses are not an element of the crime charged, and that, under *State v. Ammons,* 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796, *cert. denied,* 479 U.S. 930, 107 S. Ct. 398 (1986), the State does not have the burden of proving the validity of those convictions. That is correct, as far as it goes. There is more to the *Ammons* holding, however.

We hold that the State does not have the affirmative burden of proving the constitutional validity of a prior conviction before it can be used in a sentencing proceeding. *However, a prior conviction which has been previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face may not be considered. See In re Bush,* [26 Wn. App. 486, 616 P.2d 666 (1980), *aff'd,* 95 Wn.2d 551, 627 P.2d 953 (1981)] at 497–98; *United States v. Tucker,* 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972); *Burgett v. Texas,* 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967). Constitutionally invalid on its face means a conviction which without further elaboration evidences infirmities of a constitutional magnitude.

(Italics mine.) *Ammons,* at 187–88. Williams argues that proof of a prior conviction by means of a Department of Licensing abstract is proof of a conviction which is invalid on its face. The majority, however, reasons as follows:

Rather, it is the defendant who bears the burden of establishing the unconstitutionality of his or her prior convictions at such a proceeding. . . . Unless the convictions are facially invalid, it is presumed that a defendant's silence when his or her convictions are introduced means that they are proper to use for sentencing purposes.

(Footnote omitted.) Majority, at 368. Because Williams argues facial invalidity, there is no issue of the burden of proof. The majority simply misses the point of Williams' argument and fails to address the dispositive issue of whether the convictions the State relied on were facially invalid.

Williams' facial invalidity argument rests on the very cases cited in *Ammons* to illustrate that concept. In *Burgett v. Texas,* 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967) the Supreme Court held that a record of conviction which is facially invalid cannot be used to establish recidivism and to justify a mandatory minimum sentence. One of the convictions offered as proof in *Burgett* did not state on its face whether the defendant was or was not represented by counsel. The Court wrote:

> In this case the certified records of the Tennessee conviction on their face raise a presumption that petitioner was denied his right to counsel in the Tennessee proceeding, and therefore that his conviction was void. *Presuming waiver of counsel from a silent record is impermissible, Carnley* v. *Cochran,* [369 U.S. 506, 8 L. Ed. 2d 70, 82 S. Ct. 884 (1962)]. To permit a conviction obtained in violation of *Gideon* v. *Wainwright* [372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963)] to be used against a person either to support guilt *or enhance punishment for another offense* [*see Greer v. Beto,* 384 U.S. 269, 16 L. Ed. 2d 526, 86 S. Ct. 1477 (1966)] is to erode the principle of that case.

(Italics mine.) *Burgett,* at 114–15.

*Burgett* arguably is distinguishable from the present case because use of a prior conviction to raise an offender score under the SRA differs from its use in a recidivism prosecution; in the latter the prior conviction is an element of the crime. The Court's reference to enhancement of punishment in *Burgett* is properly dicta. However, the Court did extend the logic of *Burgett* to enhancement of punishment 5 years later in *Tucker.* There, the defendant was given the maximum sentence for armed bank robbery based in part on the trial court's inquiry into his prior convictions. Those convictions were invalid because they had been obtained in violation of the right to counsel. The Ninth Circuit remanded the case for resentencing because there was:

> "a reasonable probability that the defective prior convictions may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed."

*United States v. Tucker,* 404 U.S. 443, 445–46, 30 L. Ed. 2d 592, 595, 92 S. Ct. 589 (1972). The Supreme Court held:

> We agree with the Court of Appeals . . . For if the trial judge in 1953 had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding.

*Tucker,* at 448. *Tucker* differed slightly from *Burgett* in that the prior convictions were conclusively shown to be invalid, so there was no need to apply *Carnley's* rule that waiver of counsel cannot be inferred from a silent record. *Carnley v. Cochran,* 369 U.S. 506, 8 L. Ed. 2d 70, 82 S. Ct. 884 (1962). However, the difference between *Tucker* and *Burgett*—that one concerns proof of an element of recidivism and the other enhancement of a sentence—has no bearing on the logic behind the *Carnley* rule. That rule is equally applicable in a case concerning proof of prior convictions as an element and a case, like this one, concerning proof for purposes of enhancement. Therefore, *Carnley, Tucker* and *Burgett* establish that *where the State's proof of a prior conviction for purposes of sentence enhancement is silent on the subject of assistance of counsel, the proof is constitutionally deficient, because a court cannot infer a waiver of that right from a silent record.*

Relying on *Carnley, Burgett* and *Tucker,* Division One of the Court of Appeals has held that records of a judgment and sentence which do not reflect representation by counsel or waiver do not meet the State's burden of proof under *Ammons* and RCW 9.94A.110. This is clearly correct. Proof which is constitutionally defective is no proof at all.

The majority evades *State v. Marsh,* 47 Wn. App. 291, 734 P.2d 545 (1987) by purporting to limit it:

> In *Marsh,* the Court of Appeals held that when a judgment and sentence do not reflect representation by counsel or waiver, the conviction is facially invalid and cannot be used to establish a defendant's criminal history unless the State establishes by other documents the presence or waiver of counsel. To the extent that *Marsh* holds or

suggests that the State must prove the constitutional validity of prior convictions at a sentencing hearing, it contravenes our previous holding in *Ammons*.

Majority, at 368. This confuses the burdens of proof on two different issues. *Ammons* holds that the State does not have the burden of proving the *validity* of the prior conviction. However, the State clearly does have the burden of proving the *existence* of the prior conviction. RCW 9.94A-.110. *Marsh* does not suggest at all that the State has the burden of proving *validity*; it holds that the State's burden of proving the *existence* of the prior conviction cannot be met by the use of constitutionally defective proof.

Proof which, on its face, does not indicate the assistance of counsel does not represent a valid conviction for purposes of sentence enhancement under *Carnley, Burgett* and *Tucker*. The Department of Licensing abstract offered by the State in this case does not indicate whether the defendant had the assistance of counsel. Therefore, while the State does not have the burden of proving the *validity* of Williams' prior convictions, the State fails even to carry its statutory burden of proving the *existence* of those convictions. To carry that burden, it was necessary for the State to introduce proof of those convictions which at least indicated the presence or justifiable absence of counsel.

Because the State has not met its burden of proof under RCW 9.94A.110, I would remand for sentencing on the basis of certified copies of the prior convictions. *In re Bush*, 95 Wn.2d 551, 627 P.2d 953 (1981).