IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,       )
                          )       No. 32253-0-III
        Respondent,        )
                          )
v.                        )
                          )
TRAVIS MICHAEL CLIETT,     )       UNPUBLISHED OPINION
                          )
        Appellant.         )

SIDDOWAY, J. — For the first time on appeal, Travis Cliett challenges certain legal

financial obligations (LFOs) imposed when he was sentenced for first degree robbery,

attempted first degree robbery, second degree unlawful possession of a firearm, and

second degree burglary. And in a pro se statement of additional grounds, he raises four

grounds for review, one of which is inconsequential but nonetheless erroneous, and will

require resentencing.

Because we remand for resentencing, we exercise our discretion to review Mr.

Cliett's contention that the trial court failed to consider his ability to pay discretionary

LFOs. The court's consideration on the record was insufficiently individualized under

our Supreme Court's subsequent decision in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d

No. 32253-0-III
*State v. Cliett*

680 (2015). On remand, Mr. Cliett's ability to pay should receive a more particularized

review, whether or not the finding changes. We otherwise affirm.

## FACTS AND PROCEDURAL BACKGROUND

A jury found Travis Cliett guilty of first degree robbery, attempted first degree

robbery, second degree unlawful possession of a firearm, and second degree burglary.

At sentencing, then 23-year-old Mr. Cliett, his mother, and a chaplain all spoke to his

seven-year battle with drug abuse, the sobriety he had attained while incarcerated, and the

faith based program that Mr. Cliett told the court "I've been living for the past year[,]

practicing a structured life that the program teaches." Report of Proceedings (RP) at 8.

He presented letters of recommendation, certificates earned while incarcerated, and

concluded by telling the court:

> I want to accept responsibility and express heartfelt remorse to the
> individuals that I've been—that have been affected by my actions. I have
> no objections to my punishment as society sees fit. I'll be proactive in my
> incarceration and use this as a learning experience, and opportunity to
> better myself.

RP at 10. His lawyer asked the court to consider a sentence somewhere between the low

end and the middle of the sentencing range based on "what we've seen today and what

we've seen him do within the last two years of his life." RP at 8.

2

No. 32253-0-III
*State v. Cliett*

In imposing Mr. Cliett's sentence, the trial court imposed $1,400 in LFOs. Of that amount, $800 comprised mandatory fees, including a $100 DNA[1] collection fee assessed under RCW 43.43.7541. A discretionary cost of $600 was assessed under RCW 9.94A.760 for the recoupment of attorney fees incurred by the county in providing Mr. Cliett's legal defense. The court also ordered Mr. Cliett to pay the costs of incarceration, not to exceed $2,500, and any costs of medical care incurred by the county on his behalf while incarcerated.

The judgment and sentence included a boilerplate finding that Mr. Cliett "is an adult and is not disabled and therefore has the ability or likely future ability to pay the legal financial obligations imposed herein." Clerk's Papers (CP) at 55. The court also stated on the record, "I do make the observation, Mr. Cliett does appear to be capable of working and thus has the ability to pay." RP at 10.

Neither Mr. Cliett nor his lawyer raised any objection at sentencing to the DNA fee or discretionary costs. He appeals.

ANALYSIS

Mr. Cliett now challenges the trial court's imposition of the $600 assessed to cover the costs of his court appointed lawyer and its findings that he has the means to pay incarceration and medical costs. He argues that the findings and costs were entered and

---

[1] Deoxyribonucleic acid.

3

imposed in violation of RCW 10.01.160(3). He also argues that the court's imposition of the $100 DNA fee violates his right to substantive due process. We address the assigned errors in turn.

*I. Asserted violation of RCW 10.01.160(3)*

As a preliminary matter, we consider whether to accept review of Mr. Cliett's contention that the trial court failed to comply with RCW 10.01.160(3), since Mr. Cliett made no objection to the finding that he was able to pay the costs imposed at the time of sentencing and thereby failed to preserve a claim of error. RAP 2.5(a); *Blazina*, 182 Wn.2d at 833 ("[u]npreserved LFO errors do not command review as a matter of right"). "[A] defendant has the obligation to properly preserve a claim of error" and "appellate courts normally decline to review issues raised for the first time on appeal." *Id.* at 830, 834. The rationale for refusing to review an issue raised for the first time on appeal is well settled: issue preservation helps promote judicial economy by ensuring "that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)).

Mr. Cliett unquestionably waived his right to appeal the trial court's finding and imposition of discretionary LFOs but we enjoy discretion to make an exception to the general requirement of issue preservation. In this case, since we must remand for

4

correction of an excessive sentence imposed on the attempted first degree robbery count (discussed hereafter) we exercise our discretion to review the LFO issue.

RCW 10.01.160(3) provides that "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant." The legislature "intended each judge to conduct a case-by-case analysis and arrive at an LFO order appropriate to the individual defendant's circumstances." *Blazina*, 182 Wn.2d at 834. In order to comply with the statute, an individualized inquiry must be made on the record. *Id.* at 838. The inquiry must include the court's consideration of "important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay." *Id.*

In sentencing Mr. Cliett, the trial court's consideration of Mr. Cliett's circumstances was individualized, but was too conclusory in light of the Supreme Court's subsequent guidance in *Blazina*. In resentencing Mr. Cliett, the trial court should engage in the required individualized inquiry.

## II. Substantive due process and the DNA fee

Mr. Cliett next argues that the mandatory imposition of the DNA collection fee provided by RCW 43.43.7541 violates substantive due process as applied to him. This argument is also raised for the first time on appeal, but unlike Mr. Cliett's LFO challenge, he does not ask us to exercise discretion to consider it. Presumably he contends, as have

5

other defendants raising this issue on appeal, that the error is "manifest error affecting a constitutional right," which is an exception from RAP 2.5(a)'s requirement of issue preservation. RAP 2.5(a)(3).

To qualify for the exception provided by RAP 2.5(a)(3), an appellant must demonstrate "(1) the error is manifest, and (2) the error is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). An error will be considered manifest when there is actual prejudice, meaning a plausible showing by the appellant that the asserted error had practical and identifiable consequences in the trial. *State v. Irby*, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015) (citing *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011)). "[T]he focus of the actual prejudice [inquiry] must be on whether the error is so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100.

RCW 43.43.7541 requires every felony sentence imposed upon an adult to include a $100 DNA fee. The funds are applied toward state and local costs of maintaining a DNA database that facilitates future criminal identification, which Mr. Cliett admits is a legitimate state interest. Br. of Appellant at 16. He contends, however, that the legislation cannot survive even the most deferential "rational basis" review if it is applied to individuals who cannot afford to pay the fee. *Id.* at 15-17. He contends that he is such an individual.

6

It is well settled that a state may not invidiously discriminate against, or arbitrarily punish, indigent defendants for their failure to pay fines they cannot pay. *State v. Johnson*, 179 Wn.2d 534, 552, 315 P.3d 1090 (citing *Bearden v. Georgia*, 461 U.S. 660, 665, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983)), *cert. denied*, 135 S. Ct. 139 (2014). The implications of Mr. Cliett's argument—that we find a substantive due process violation whenever an otherwise rational law is applied to someone who cannot afford to comply with it—are, frankly, staggering.[2] So far, however, we have refused to entertain a

---

[2] The United States Supreme Court discussed such an argument in the taxation context in *Stewart Dry Goods Co. v. Lewis*, 294 U.S. 550, 561-63, 55 S. Ct. 525, 79 L. Ed. 2d 1054 (1935):

[T]he appellees tell us that, if and when the load becomes too heavy upon any taxpayer, he may with confidence invoke the Fourteenth Amendment. . . .
To condemn a levy on the sole ground that it is excessive would be to usurp a power vested not in the courts but in the legislature and to exercise the usurped power arbitrarily by substituting our conceptions of public policy for those of the legislative body. In *Veazie Bank* v. *Fenno*, [75 U.S. (8 Wall.) 533, 19 L. Ed. 482 (1869)], a tax of ten per cent. on the notes of state banks was upheld although it "drove out of existence every State bank of circulation within a year or two after its passage." See *Loan Association* v. *Topeka*, [87 U.S. (20 Wall.)] 655, 663, 664[, 22 L. Ed. 455 (1875)]. In *Knowlton* v. *Moore*, 178 U. S. 41[, 20 S. Ct. 747, 44 L. Ed. 969 (1900)], in sustaining an excise tax this court said, "if a lawful tax can be defeated because the power which is manifested by its imposition may when further exercised by destructive, it would follow that every lawful tax would become unlawful, and therefore no taxation whatever could be levied." [178 U.S. at 60]. See, also, [*A.*] *Magnano Company* v. *Hamilton*, 292 U. S. 40[, 54 S. Ct. 599, 78 L. Ed. 1109 (1934)]; *Fox v. Standard Oil Co.* [*of N.J.*, 294 U.S. 87, 55 S. Ct. 333, 79 L. Ed. 780 (1935)]. Once the lawfulness of the method of levying the tax is affirmed, the judicial

7

substantive due process challenge to the DNA fine on a threshold basis: no challenger to date has presented a record on appeal that is sufficient to review the argument. *E.g.*, *State v. Stoddard*, 192 Wn. App. 222, 228-29, 366 P.3d 474 (2016); *cf. Johnson*, 179 Wn.2d at 551-52 (limiting standing to challenge license suspension for nonpayment of child support to the constitutionally indigent).

The record contains no information that Mr. Cliett lacks funds to pay a $100 fee; he directs us to only his statutory indigence for purposes of court appointment of appellate counsel. Evidence of his statutory indigence is unhelpful because the cost of appellate representation in a criminal matter "exponentially exceeds $100." *Id.* Mr. Cliett has failed to show manifest error and we decline to exercise discretion to review his substantive due process challenge.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Cliett raises four: (1) that his convictions for attempted first degree robbery and second degree unlawful possession of a firearm should have been treated as the same criminal conduct; (2) that his conviction for attempted first degree robbery is a class B felony, yet he was sentenced as if it were a class A felony; (3) that he received an excessive sentence for his conviction

---

function ceases. He deludes himself by a false hope who supposes that, if this court shall at some future time conclude the burden of the exaction has become inordinately oppressive, it can interdict the tax.

8

No. 32253-0-III
*State v. Cliett*

for second degree unlawful possession of a firearm; and (4) that he received ineffective assistance of counsel. We address his contentions in turn.[3]

*Same criminal conduct.* If two current offenses encompass the same criminal conduct, they count as one point in calculating a defendant's offender score. RCW 9.94A.589(1)(a). Two crimes are considered the same criminal conduct only if they involve the same time and place, the same victim, and the same criminal intent. *Id.* If one of these elements is missing, the offenses must be counted individually toward the offender score. *State v. Haddock*, 141 Wn.2d 103, 110, 3 P.3d 733 (2000).

Mr. Cliett's convictions for attempted first degree robbery and second degree unlawful possession of a firearm did not constitute the same criminal conduct for sentencing purposes because the victim of the two crimes differ. The victim of the offense of unlawful possession of a firearm was the general public, while the victim of the attempted robbery was the property owner from whom Mr. Cliett attempted to steal. *See Haddock*, 141 Wn.2d at 110-11 (the general public is the victim of the crime of unlawful possession of a firearm); *State v. Webb*, 112 Wn. App. 618, 624, 50 P.3d 654 (2002).

---

[3] At our request, the State filed supplemental briefing to address the claimed error in sentencing for count two. In its submission, the State volunteered that Mr. Cliett might have been sentenced in error to 18 months' community custody on that count. We find no error in the community custody sentence.

9

*Statutory maximum for attempted first degree robbery.* First degree robbery is a class A felony. RCW 9A.56.200(2). An attempt to commit a class A felony is a class B felony unless otherwise specified. RCW 9A.28.020(3)(a), (b). Because RCW 9A.28.020(3)(a) does not specify that attempted first degree robbery is a class A felony, it is a class B felony. RCW 9A.28.020(3)(b). As Mr. Cliett points out, the statutory maximum for a class B felony is 10 years (120 months). RCW 9A.20.021(b). While the court noted the correct maximum term elsewhere in the judgment and sentence, its order on confinement included a sentence of 128.25 months for the attempted robbery count. While the error has no practical effect (Mr. Cliett's base sentence for the first degree robbery count, which runs concurrently, is 171 months), it is an error. Mr. Cliett is entitled to have it corrected.

*Statutory maximum for second degree unlawful possession of a firearm.* Mr. Cliett's third ground states, "Count 3. Statutory max is 60 months." SAG at 2. The third count reflected in the judgment—second degree unlawful possession of a firearm—is a class C felony. RCW 9.41.040(2)(b). The maximum term of confinement for a class C felony is five years (60 months). RCW 9A.20.021(c). While the judgment and sentence as presented to the trial court identified the high end of the standard range for this count as 68 months, a manual notation was made to the order on confinement, correcting the

10

term of confinement imposed on count three to "60" months. CP at 55. A correction to the sentencing data section (2.5) may be made at the time of resentencing.

*Ineffective assistance of counsel.* Finally, Mr. Cliett asserts that he received ineffective assistance of counsel because his trial lawyer (1) was unaware of the status of proceedings associated with Mr. Cliett's codefendant, (2) missed court dates because of health problems, and (3) "had a grudge against [him]." SAG at 2.

A successful ineffective assistance of counsel claim requires the defendant to show that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Prejudice" for this purpose is the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. We need not consider both prongs of *Strickland* (deficient performance and prejudice) if a petitioner fails one. *Id.* at 697.

Mr. Cliett fails to articulate any respect in which he was prejudiced by the acts or omissions about which he complains. His challenge fails without the need to consider whether his lawyer's representation was deficient.

We remand for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the

11

No. 32253-0-III
*State v. Cliett*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Clarke, J.P.T.

12